UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

NORTHERN MICHIGAN FRUIT
COMPANY, INC.,

    Debtor.
_____

THOMAS A. HAILS COMPANY,
INC.,

    Creditor-Appellant,

v.

COLLEEN OLSON,

    Movant-Appellee.
_____/

Case No. 1:09-cv-1127

HON. JANET T. NEFF

## **OPINION**

Pursuant to 28 U.S.C. § 158(a), Creditor Thomas A. Hails Company, Inc. appeals from an October 15, 2009 order of the bankruptcy court, the Honorable Scott W. Dales, granting Summary Judgment to Colleen Olson, the Chapter 7 Trustee of the bankruptcy estate of the Debtor, Northern Michigan Fruit Company, Inc. The Court finds that the relevant facts and arguments are adequately presented in the parties' briefs and that oral argument would not aid the decisional process. For the following reasons, the Court affirms the decision of the bankruptcy court.

## I. BACKGROUND

In September 2002, the Debtor, a fruit processing company, filed a petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* The case was converted to a case under Chapter 7 on February 18, 2004, *see* 11 U.S.C. § 1112(a), and Olson was appointed as Trustee. On April 14, 2005, the Trustee filed a Notice of Possible Dividends to Creditors, indicating that "[i]n order to share in this distribution, a creditor must file a proof of claim ... within 90 days of the date of service."

On July 13, 2005, within the ninety days allotted, the Creditor, a food broker, filed a Proof of Claim seeking an unsecured priority claim totaling $223,699.68 pursuant to the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a *et seq.* The Creditor contended that it made an agreement with the Debtor in 1990 that the Debtor would pay it brokerage fees or commissions "at least once a year, generally after the cherry pack, and . . . the Hails Company would carry it as an accounts receivable," although the Creditor did not produce any written documentation of the agreement (10/13/2009 Mot. Hr'g Tr. at 14-17; *see also* 10/12/2009 Aff., Thomas A. Hails, ¶¶ 12-13).

On March 24, 2008, the Trustee filed a Notice of Trustee's Report and Final Account to the Creditors. On April 22, 2008, the Creditor filed an Objection to the Notice, asserting that the Trustee had no basis for treating its claim as a general, unsecured claim. The Trustee, however, asserted that the majority of the funds available for distribution consisted of the Trustee's recoveries from entities to whom the Debtor had made pre-petition payments. The Trustee contended that these funds could not be impressed with a PACA statutory trust. The Creditor disputed the Trustee's position, claiming that a PACA trust follows the payments into the bankruptcy estate.

In October 2008, the Trustee requested the Creditor to "produce a copy of your written notice of intent to preserve the PACA trust or your claim to the PACA trust that you sent to the commission merchant, dealer or broker pursuant to 7 U.S.C. § 499e(c)(3)." The Creditor did not produce a written notice of intent but "objected" to the request "in that the same seeks to impose a statutory burden that does not exist."

At a pretrial conference on January 20, 2009, the parties and the bankruptcy court agreed that resolution of the dispute would benefit from briefing and decision on certain pivotal issues in the case. The bankruptcy court required the parties to first file dispositive motions on what amounts were currently held by the bankruptcy estate subject to the Creditor's PACA claim, leaving the question of whether the Creditor had properly preserved its PACA claim for a decision at a later date (5/21/2009 Mot. Hr'g Tr. at 6, 36).

The parties filed their cross-motions in March 2009 on the first issue, and the bankruptcy court held a hearing on May 21, 2009. After hearing argument, the bankruptcy court informed the Creditor that regarding "[t]he property that came in by virtue of the creation of the estate at the instant [] the petition was filed, I think you've got your floating trust argument there. The property that came in under 541(a)(3), which is post-petition property, I think you're going to have to make the tracing argument because, by definition, it came in from someone else" (5/21/2009 Mot. Hr'g Tr. at 39). According to the bankruptcy court, the Creditor bears "the burden of tracing its PACA trust entitlement into the hands of the defendant's preference or otherwise from whom the trustee recovered postpetition" (*id.* at 38). On May 28, 2009, the bankruptcy court issued a "Memorandum of Decision and Order Regarding Cross-Motions for Summary Judgment in Contested Matter" in which the bankruptcy court ruled that the funds in the estate "may be distributed to the estate's

3

creditors unless the PACA Claimant establishes, by a preponderance of the evidence, that the funds are traceable back to the Debtor and, while in the Debtor's hands, remained subject to the floating trust." The bankruptcy court indicated that "[t]his will be determined after the court hears evidence."

On October 1, 2009, the Trustee filed a "Motion for Summary Judgment Regarding the Creditor's Failure to Provide Written Notice of Intent to Preserve its PACA Claim." The bankruptcy court heard the motion on October 13, 2009. The Trustee argued that a creditor seeking protection under PACA must "strictly" comply with the statutory notice requirements (10/13/2009 Mot. Hr'g Tr. at 5). The Trustee argued that the Creditor had not strictly complied with the notice requirements where (1) the Creditor concedes there were no payment terms in place with regard to this brokerage; and (2) even if there is a letter between the Creditor and Debtor referencing their brokerage relationship, the letter does not meet the notice requirements of the statute or the applicable federal regulation (*id.* at 31, 33).

The Creditor argued that "substantial" compliance with the statutory notice requirements is sufficient, that the "trend" in the case law was away from strict compliance and toward a substantial compliance approach (10/13/2009 Mot. Hr'g Tr. at 13, 27). The Creditor opined that "unless ... you take this strict compliance stand," the notice issue could not be resolved without testimony about the parties' long brokerage relationship in the fruit industry and their purported 1990 agreement (*id.* at 16, 27). Pointing to a February 12, 2001 letter the Creditor sent the Debtor after the Debtor removed the brokerage fees due from its current liabilities, the Creditor argued that it was "disingenuous" to "sit here and argue that the parties didn't know what transaction they were talking about, that letter [was] sufficiently detailed to provide Mr. Weaver and Northern Michigan Fruit the

4

intent that this was, 'hey, my PACA brokerage needs to be paid or given some protection per our agreement'" (*id.* at 11, 34-35).

The bankruptcy court indicated to counsel for the Creditor that the court had searched the record "in vain" for the February 12, 2001 letter the Creditor referenced in its response to the Trustee's motion for summary judgment (10/13/2009 Mot. Hr'g Tr. at 28). The Creditor agreed that the letter was not attached to either its discovery responses or its response to the Trustee's motion (*id.*). The Creditor indicated that it had instead supplied the bankruptcy court with the letter as an exhibit in the trial binders it delivered to the court (*id.*) The trial exhibits, which were not electronically filed, were not then available to the bankruptcy court, so the Creditor attached the letter to an e-mail to the court during the motion hearing (*id.* at 32).

The bankruptcy court therefore reviewed the letter for the first time during the motion hearing. After its review, the bankruptcy court indicated on the record that the letter "makes no mention of PACA whatsoever" and "makes no mention of that letter being an intent to preserve the PACA trust benefits" (10/13/2009 Mot. Hr'g Tr. at 33). The bankruptcy court further noted that the letter "doesn't contain any of the specific information required by not only section ... 499e(c)(3) but it also doesn't contain any of the specific information that is required under 7 C.F.R. § 46.46(f)" (*id.*).

The bankruptcy court orally ruled on the summary judgment motion before it, framing the issue as whether "there is a genuine issue of material fact concerning whether the creditor preserved its statutory trust rights under ... PACA" (10/13/2009 Mot. Hr'g Tr. at 40). The bankruptcy court pointed out that the Creditor's "failure to preserve the PACA trust rights, if established, would render immaterial every other factual dispute, including whether the Creditor could trace the funds

5

from the debtors, through the preference defendants, and back to the estate" (*id.* at 42). The bankruptcy court indicated that the Creditor's priority distribution depended on "whether the Creditor protected itself by complying with 7 U.S.C., section 499e(c)(3)" (*id.* at 43). The bankruptcy court concluded that the Creditor had not so protected itself, for the following reasons:

> [I]n view of the statute of frauds that's imbedded in section 499e, the Creditor's response fails for two reasons. First, the – as I indicated, the February 12th letter does not satisfy the statute's requirement as a written notice of intent to preserve PACA rights. And, second, assuming the February 12 letter would qualify under section 499e(c)(3), the court cannot determine whether the Creditor sent it within 30 days after the payment date that the Creditor and Debtor expressly agreed to in writing before entering into the transaction because, first of all, the Creditor did not supply any such agreement in response to the motion. And, secondly, it appears from argument today that there really was no payment deadline. It was a rather informal accommodation to assist the parties with their cash flow. It's quite possible that the Creditor is relying on an informal arrangement in which it would forebear from demanding payments as long as the Debtor listed the obligations among its current liabilities, and that this arrangement is "consistent with the creditor's practice of not requiring the debtor to abide by any specific terms of payment." And that is a quote from the *Overton Distributors* case, 340 F.3d at 367. There is, of course, nothing improper about such an arrangement, but it does not comply with PACA's requirements for preserving trust benefits, requirements that depend upon substantial compliance with the statute of frauds that Congress included in the trust preservation portion of the statute. . . .
>
> In response to the Trustee's well supported motion, the Creditor offered no evidence of any written notice of intent to preserve its PACA trust benefits, and no evidence of any written agreement that would make the February 12th, 2001 letter satisfactory. There is no genuine issue of any material fact concerning whether the creditor is PACA qualified and therefore entitled to priority in distribution. Clearly the Creditor is not so entitled. . . .
>
> Under these circumstances, the Court will enter an order sustaining the Trustee's objection to claim and authorizing her to treat the Creditor's claim as a general unsecured claim not entitled to priority treatment.

10/13/2009 Mot. Hr'g Tr. at 47-49. The bankruptcy court effectuated its ruling on October 15, 2009, issuing an order granting the Trustee summary judgment "for the reasons set forth on the record."

6

On November 4, 2009, the Creditor instituted the appeal in this Court, challenging the bankruptcy court's resolution of the notice issue as well as its earlier ruling that the Creditor bears the burden of tracing the funds in order to show that the funds are impressed with a PACA trust. The parties stipulated to a stay pending the proceedings in this Court.

## II. ANALYSIS

The PACA provides in pertinent part that "[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2).

The Act further provides that "[t]he unpaid supplier, seller, or agent shall *lose* the benefits of such trust *unless* such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored." *Id.* (emphases added). "The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust." *Id.* "Under all circumstances, the seller must give the buyer written notice of the seller's intention

7

to preserve its trust benefits." *Overton Distributors, Inc. v. Heritage Bank,* 340 F.3d 361, 365 (6th Cir. 2003).

"The statute and the federal regulations expressly lay out the steps that a produce seller must take to come within PACA's protection." *Overton,* 340 F.3d at 365. The pertinent federal regulation is 7 C.F.R. § 46.46(f)(1), which delineates in the following manner the amount of detail necessary for inclusion in a notice of intent to preserve trust benefits:

> **(f)** **Filing notice of intent to preserve trust benefits**
>
> > (1) Notice of intent to preserve benefits under the trust must be in writing, must include the statement that it is a notice of intent to preserve trust benefits and must include information which establishes for each shipment:
> >
> > > (i) The names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable,
> > >
> > > (ii) The date of the transaction, commodity, invoice price, and terms of payment (if appropriate),
> > >
> > > (iii) The date of receipt of notice that a payment instrument has been dishonored (if appropriate), and
> > >
> > > (iv) The amount past due and unpaid.

At issue here is whether the bankruptcy court erred in holding that the Creditor's written notice of intent to preserve its claim to any PACA trust assets that the bankruptcy estate may be holding did not meet the statutory notice requirements. "This Court must review a bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law de novo." *Westbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Serv., Inc.),* 106 F.3d 1255, 1259

(6th Cir. 1997). "On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANK. P. 8013. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.*

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); FED. R. BANKR. P. 9014. In considering such a motion, a court must construe all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The parties do not dispute that a PACA trust beneficiary must give written notice of intent to preserve a trust (Dkt 8 at 31; Dkt 10 at 20). The parties also do not dispute that the written notice must (1) include sufficient detail to identify the transaction subject to the trust; and (2) be delivered within 30 days, the 30-day period being measured from one of three deadlines provided in the statute, 7 U.S.C. § 499e(c)(3)(*i*)-(*iii*) (Dkt 8 at 31; Dkt 10 at 18-20).[1]

The parties agree that on the facts of this case, the 30-day period is *not* measured from either "the time ... set forth in regulations," 7 U.S.C. § 499e(c)(3)(*i*); or "the time the supplier, seller, or

---

[1]In addition to the method of preserving the benefits of the trust specified in paragraph (3) of the statute, paragraph 4 provides that a licensee "may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust." 7 U.S.C. § 499e(c)(4). The Creditor conceded that its invoices did not contain this required language (10/13/2009 Mot. Hr'g Tr. at 5, 9, 26, 42).

agent has received notice that the payment instrument promptly presented for payment has been dishonored," 7 U.S.C. § 499e(c)(3)(*iii*) (Dkt 8 at 31; Dkt 10 at 18). The only basis upon which the Creditor is claiming it preserved its trust protections is 7 U.S.C. § 499e(c)(3)(*ii*), which provides for delivery of a notice of intent within 30 days "after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction" (Dkt 8 at 31; Dkt 10 at 18).

The writing upon which the Creditor relies is the February 12, 2001 letter from the Creditor to the Debtor, sent one week after the Debtor changed the terms of their agreement (Dkt 8 at 32). Unfortunately, the Creditor did not electronically file the letter after the motion hearing in bankruptcy court so that the letter would be a part of the bankruptcy court record subsequently made available to this Court, nor did the Creditor attach the letter to its appellant's brief filed in this Court. As with its omission at the bankruptcy court level, the Creditor failed to provide the document that forms the crux of its notice argument.

In any event, the existence of the letter is not in dispute, nor is there any dispute over the bankruptcy court's factual representations about the letter. The Creditor does not contend that the letter includes a statement that the letter is a notice of intent to preserve trust benefits. *See* 7 C.F.R. § 46.46(f)(1). Second, although there is no dispute that the letter demands payment, the Creditor does not contend that the letter otherwise identifies the transaction subject to the trust with the specificity required by the applicable regulation, 7 C.F.R. § 46.46(f)(1)(*i*)-(*iv*). Last, as the Creditor supplied no memorialization of the brokerage agreement between the Creditor and Debtor, there is no basis upon which to properly conclude under 7 U.S.C. § 499e(c)(3)(*ii*) that the February 12, 2001 letter was sent within 30 days after a time "expressly agreed to in writing" by the parties.

To avoid the consequences of its failure to comply with PACA's notice requirements, the Creditor argues on appeal, as it argued in bankruptcy court, that a substantial compliance approach to the statutory notice requirements compels a different result, specifically, that the Creditor's purported notice should permit it to survive the Trustee's summary judgment motion and have its requested "day in court." The Creditor asserts that "[c]ourts are split on whether there must be strict compliance with P.A.C.A. preservation notice requirements, or whether 'substantial compliance' is enough" (Dkt 8 at 32). The Creditor opines that the bankruptcy court clearly erred in its "baseless" and "Draconian" reliance on "some 'format' that the notice is required to have" (*id.* at 34-35). The Creditor emphasizes that the parties "intended the written notice to be notice" and that the Debtor "understood the written notice to protect the P.A.C.A. brokerage due" (*id.* at 34). The Creditor requests this Court reverse the bankruptcy court's grant of summary judgment to the Trustee and remand the matter to the bankruptcy court for the Creditor to provide testimony at trial in support of its position that the Debtor accepted the Creditor's letter as a preservation of PACA trust protections (*id.* at 36).

The Sixth Circuit Court of Appeals considered and rejected a similar substantial-compliance argument made in *Overton,* where the creditor argued that it should be permitted to avoid the consequences of its failure to comply with PACA's requirements "due to its good faith effort to substantially comply with PACA." 340 F.3d at 366. The Sixth Circuit determined that the statute "imposes strict disclosure obligations" and ultimately held that the creditor had failed to preserve its trust benefits under PACA where the creditor changed the terms appearing on its invoices, thereby extending the payment term outside both that provided for in the parties' written agreement and PACA's 30-day maximum allowable payment term. *Id.* at 367. Indeed, the Sixth Circuit

11

reached this holding even though the payment terms included on the relevant invoices "had the effect of requiring payment within thirty days on shipments." *Id.*

As the Trustee argues in its appellee brief, the February 12, 2001 letter on which the Creditor places its after-the-fact reliance in this case is an even weaker basis for a substantial-compliance approach than the facts in *Overton* (Dkt 10 at 17-24). As previously stated, the February 12, 2001 letter does not include a statement that the letter is a notice of intent to preserve PACA trust benefits, does not identify the transaction subject to a PACA trust, and was not delivered within 30 days of any written brokerage agreement between the Creditor and Debtor. The Creditor has simply not demonstrated any factual or legal error in the bankruptcy court's decision to grant the Trustee summary judgment in this case. Rather, the Court holds that the bankruptcy court properly applied the requirements set forth in the statute and the federal regulation and properly found that the Creditor did not take the steps necessary to preserve its rights and come within PACA's protection.

The remaining issue the Creditor seeks to present on appeal is its challenge to the bankruptcy court's ruling that the Creditor bears the burden of tracing the purported PACA trust funds. However, as the bankruptcy court recognized, the tracing issue is irrelevant, given that the Creditor's claim shall not be treated as a priority PACA claim but as a general, unsecured claim. This Court is not empowered to give an opinion on a moot question or declare a rule of law that cannot affect the matter in issue in the case before it. *See Alabama Power Co. v. Clean Earth Ky., LLC (In re Clean Earth Ky., LLC),* 312 F. App'x 718, 719 (6th Cir. 2008) (citing *Deakins v. Monaghan,* 484 U.S. 193, 199 (1988)).

## III. CONCLUSION

For the foregoing reasons, the Court affirms the bankruptcy court's decision to grant the Trustee summary judgment. An Order consistent with this Opinion will be entered.


Date: July 15, 2010                               /s/ Janet T. Neff
                                                  JANET T. NEFF
                                                  United States District Judge